(875 P.2d 986)
No. 69,920

STATE OF KANSAS, *Appellee*, v. SHAWN T. GRANT, *Appellant.*
Petition for review denied 255 Kan. 1005 (1994).

Opinion filed June 10, 1994.

*Stephen C. Moss*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Brandi L. Dunning*, assistant county attorney, *Robert Forer*, county attorney, and *Robert T. Stephan*, attorney general, for appellee.

Before GERNON, P.J., PIERRON, J., and THOMAS H. SACHSE, District Judge, assigned.

GERNON, J.: Shawn T. Grant directly appeals after his conviction of one count of forgery.

On September 10, 1992, Grant was charged with one count of forgery and one count of obstruction of official duty. Grant was arrested for a traffic violation and, while at the police station, Grant provided police with a false name and forged someone else's name to a fingerprint card during the booking process. Pursuant to a plea bargain, Grant pled guilty to the forgery charge in exchange for the dismissal of the charge of obstruction of official duty. The State also agreed to abide by the presentence investigation (PSI) report's recommendation as to sentencing. The PSI report stated that Grant was "not a suitable candidate for consideration of community based supervision."

At the sentencing hearing, the trial court found that both presumptions as to probation and assignment to community correc-

tions had been overcome and sentenced Grant to one to five years' imprisonment. Grant filed a motion to modify his sentence, which was denied by the court after a hearing.

Grant filed a notice of appeal, which stated: "Notice is hereby given that the Defendant, Shawn T. Grant, appeals from denial of his Motion to Modify Sentence to the Court of Appeals of the State of Kansas." On May 26, 1993, after the case had been assigned to the Appellate Defender's Office, Grant filed an "Amended Notice of Appeal" *out of time*, which stated: "Notice is hereby given that defendant Shawn T. Grant appeals from the imposition of sentence on December 14, 1992 in addition to the matters referred to in the notice of appeal filed on April 2, 1993."

On July 26, 1993, this court issued an order to show cause as to why the appeal should not be limited to the denial of Grant's motion to modify. Grant argued several points in response: (1) The amended notice of appeal related back to the original timely notice of appeal and could, therefore, be considered; (2) trial counsel was ineffective in that he only appealed from the denial of the motion to modify because he incorrectly assumed he could not appeal the sentence; and (3) under *State v. Ortiz*, 230 Kan. 733, 640 P.2d 1255 (1982), a defendant is entitled to pursue an out-of-time appeal where his trial counsel fails to timely perfect an appeal.

Grant also filed a supplemental response, arguing a review of the record revealed that, in his opinion, there was no factual basis for the plea and that the trial court erred in finding that the presumptions as to probation and assignment to community corrections had been overcome. Grant also reiterated his belief that trial counsel had been ineffective because he had failed to appeal from the sentence. Grant's trial counsel responded by letter to this court, defending his action in filing the notice of appeal as to only the denial of the motion to modify.

On September 13, 1993, the appeal was dismissed in its entirety. Grant filed a motion to have the appeal reinstated, arguing that the dismissal exceeded the scope of the original show cause order. Grant had timely filed a notice of appeal as to the denial of his motion to modify, and the motion to reinstate was granted. However, the parties were "ordered to address in their briefs on the merits this court's jurisdiction to consider sentencing issues.

In particular, the parties are ordered to address the effect of an untimely amended notice of appeal which attempts to raise issues not contemplated in a timely notice of appeal."

As a threshold matter, Grant's original notice of appeal as to the denial of his motion to modify was timely filed, and this court has jurisdiction to consider that issue. A question arises, however, as to the effect of the amended notice of appeal, which attempts to raise issues regarding Grant's sentencing.

Grant argues that, as the first notice of appeal was timely filed, any amended notices of appeal would also be timely because they would *relate back* to the date the original notice of appeal was filed. In support of this position, Grant points to K.S.A. 22-3606.

K.S.A. 22-3606 provides: "Except as otherwise provided by statute or rule of the supreme court, the statutes and rules governing procedure on appeals to an appellate court in civil cases shall apply to and govern appeals to an appellate court in criminal cases."

Grant contends that, as no provision in Chapter 22 relates to amended pleadings, the provisions of the Kansas Code of Civil Procedure apply.

K.S.A. 60-215(c) addresses the effect of an amendment to a civil pleading: "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." Grant contends that, although this provision applies to the amendment of pleadings, the same rationale should apply to amended notices of appeal. Grant argues that his guilty plea, sentence, and motion to modify are all elements of a singular conviction and, thus, can be said to arise out of the same "conduct, transaction, or occurrence" contemplated by K.S.A. 60-215(c).

Grant likens the amended notice of appeal in the present case to the failure to designate to which court the appeal is taken, an issue which was recently addressed in *City of Ottawa v. McMechan*, 17 Kan. App. 2d 31, 829 P.2d 927 (1992). In *McMechan*, the court held that where there is but one court to which an appeal may be taken, the failure to correctly name that court in the notice of appeal, as required by K.S.A. 1993 Supp. 60-2103(b),

is a mere irregularity to be disregarded unless the appellee has been misled or otherwise prejudiced. 17 Kan. App. 2d at 32. Grant argues that in the present case, there is no risk that the appellee was misled because the amended notice of appeal was filed early in the appellate process.

In *State v. Myers*, 10 Kan. App. 2d 266, 268-69, 697 P.2d 879 (1985), this court addressed the general principles of appellate jurisdiction:

" 'The right of appeal is entirely a statutory right; no appellate review is required by the federal constitution [citation omitted] or the Kansas Constitution. [Citations omitted.] It is the established rule in this state that this court has no jurisdiction to entertain an appeal by defendant in a criminal case, unless he takes his appeal within the time prescribed by the statutes providing for such an appeal. [Citations omitted.] The supreme court has only such appellate jurisdiction as is conferred by statute pursuant to Article 3, Section 3, of the Kansas Constitution, and when the record discloses lack of jurisdiction, it is the duty of the [appellate] court to dismiss the appeal. [Citations omitted.]' "

K.S.A. 1993 Supp. 22-3608(a) provides that if sentence is imposed, *an appeal must be taken within 10 days of the expiration of the court's power to modify the sentence, which is 120 days from sentencing.* See K.S.A. 1993 Supp. 21-4603(d)(1).

In the present case, Grant's original notice of appeal was filed on the 109th day following sentencing. The amended notice of appeal was filed *33 days out of time.*

Chapter 22 of the Kansas Statutes Annotated does not specify the form or content required for a notice of appeal from district court. K.S.A. 22-3606 refers this court to K.S.A. 1993 Supp. 60-2103(b), which provides: "The notice of appeal shall specify the parties taking the appeal; *shall designate the judgment or part thereof appealed from,* and shall name the appellate court to which the appeal is taken." (Emphasis added.) K.S.A. 1993 Supp. 60-2103(b), however, does not require the judgment or part thereof appealed from to be identified by the specific date of its entry. *Harvey v. Harvey*, 215 Kan. 472, 476, 524 P.2d 1187 (1974).

In *Hess v. St. Francis Regional Med. Center*, 254 Kan. 715, 869 P.2d 598 (1994), St. Francis argued that Hess' notice of appeal failed to designate any trial court rulings as being challenged and, thus, consideration of any claim by Hess that the trial judge erred

was precluded. The notice of appeal challenged " 'the following portions of the jury verdict and judgment' " entered by the trial court:

" '1. The jury's determination of comparative fault. (Special questions one and two).

2. The jury's determination of the period of time over which payment of future economic loss would be needed. (Special question five).

3. The jury's determination of net amount of collateral source benefits received to date. (Special question six).

4. The jury's determination of net amount of collateral source benefits to be received in the future. (Special question seven).' " 254 Kan. at 718.

The court stated: "It is a fundamental proposition of Kansas appellate procedure that an appellate court only obtains jurisdiction over the rulings identified in the notice of appeal." 254 Kan. at 718. See *Anderson v. Scheffler*, 242 Kan. 857, 861, 752 P.2d 667 (1988); *Carrick v. McFadden*, 216 Kan. 683, 690, 533 P.2d 1249 (1975). However, the court applied a liberal construction to the language used by Hess and found that the words "and judgment entered by the court" were sufficient to raise on appeal the comparative fault and collateral source benefits determinations. 254 Kan. at 719-20. The court also noted that St. Francis did not claim that it was surprised or placed at a disadvantage by the issues appellant briefed.

In *State v. Griffen*, 241 Kan. 68, 69, 734 P.2d 1089 (1987), the State argued that Griffen's notice of appeal, which stated that Griffen appealed from " 'his conviction and sentence,' " was insufficient to allow the court to consider his argument regarding the denial of his motion to modify sentence. The court found as follows:

"We find the State's jurisdictional attack to be without merit. This Court is the final arbiter in determining whether statutory jurisdictional requirements have been met in any case filed in the courts of Kansas. We have often recognized that jurisdiction in any action on appeal is dependant upon strict compliance with the statutes. However, when there is a valid controversy whether the statutory requirements have been complied with, we are required to construe those statutes liberally to assure justice in every proceeding. See K.S.A. 60-102 and K.S.A. 22-2103; *State v. Hill*, 211 Kan. 287, 294, 507 P.2d 342 (1973). There is no showing that the notice of appeal misled the State or that anyone was surprised or prejudiced by the issues on appeal. We conclude the notice of appeal was sufficient to vest jurisdiction in this court." 241 Kan. at 69-70.

Here, there is no "valid controversy whether the statutory requirements were complied with." The amended notice of appeal raising additional issues was filed out of time.

Grant cites no authority for his application of K.S.A. 60-215(c) to the present case. We conclude that a notice of appeal from district court cannot be considered a "pleading" within the meaning of K.S.A. 60-215(c).

Grant also fails to provide this court with any authority to justify the practice of filing amended notices of appeal out of time. Allowing a defendant to amend his timely filed notice of appeal at any time clearly defeats the purpose of K.S.A. 1993 Supp. 60-2103(b), which requires a party to state the grounds upon which his appeal is based at the time the appeal is taken. Failure to properly designate the judgment or part thereof appealed from is very different from inadvertently failing to designate the proper appellate court. See *Alliance Mutual Casualty Co. v. Boston Insurance Co.*, 196 Kan. 323, 326-27, 411 P.2d 616 (1966). We conclude that it is not an irregularity which can simply be disregarded.

As the amended notice of appeal was filed outside the time for an appeal to be taken in the present case, it may not be considered, even assuming a lack of prejudice to the opposing party.

Under the relevant Kansas statutes, case law, and Supreme Court Rules, an appellant is bound by the issues raised in the notice of appeal and cannot amend this notice after the time for an appeal has run simply because counsel or the appellant conclude that the scope of the original notice is too narrow to reach additional appealable issues.

The practice of filing amended notices of appeal has become an issue since our opinion in *State v. Duckett*, 13 Kan. App. 2d 122, 764 P.2d 134 (1988), *rev. denied* 244 Kan. 739 (1989). Duckett's notice of appeal read: " 'Notice is hereby given by the defendant . . . of his intention to appeal *the denial of the motion to modify* entered on September 4, 1987.' " 13 Kan. App. 2d at 123. Duckett then attempted to raise issues regarding his sentencing in his brief. This court held that Duckett

"did not sufficiently comply with our statutes and rules so as to perfect an appeal by which he may obtain review of his sentencing. We reach that conclusion even though the State has not been misled or caused surprise or prejudice. [Citation omitted.] . . . Not being the final arbiter on questions of jurisdiction, we have applied requirements for appellate jurisdiction as found in our statutes, rules, and case law. Nothing obstructed the ability of trial or appellate defense counsel to *timely designate* in the notice of appeal, or *in an amended notice of appeal*, defendant's sentencing as a judgment or decision from which appeal was taken." 13 Kan. App. 2d at 126. (Emphasis added.)

We do not read this language in *Duckett* to sanction the current practice of filing untimely amended notices of appeal.

The appellate procedures and rules are, and have been, in place to bring some orderly closure to appeals. A literal reading and application of the statutes and rules is not only necessary from a legalistic view, but also from a real world view of appellate practice. To find otherwise is to invite chaos to a system based on the orderly disposition of appeals. It should be strongly discouraged.

Grant's timely notice of appeal remains, but no amount of liberal construction can broaden the scope of its language. The notice of appeal specifically states: "Notice is hereby given that the Defendant, Shawn T. Grant, appeals from *denial of his Motion to Modify Sentence to the Court of Appeals of the State of Kansas.*" (Emphasis added.) Therefore, our task here is limited to issues regarding the denial of his motion to modify.

We are aware of the dilemma faced by the Appellate Defender's Office in these cases. That office is given the responsibility of going forward with an appeal after other counsel has filed the notice of appeal and stated the issues on appeal and the time has expired for setting the scope of the appeal. Our task is to apply the statutes and rules to the record before us. We have no authority to do otherwise. We cannot alter the notice form to include the language "and all other adverse rulings." We cannot rewrite the statutes or rules. Here, the language in the notice and the time frame are clear and not ambiguous.

We find that Grant has not sufficiently complied with the applicable statutes and rules so as to perfect an appeal by which he may obtain review of his sentencing and guilty plea. See *State v. Duckett*, 13 Kan. App. 2d at 126. The portion of Grant's appeal

encompassed by the amended notice of appeal is hereby dismissed.

## Ineffective Assistance Of Trial Counsel

Grant argues that, in the event this court decides not to consider the issues raised in the amended notice of appeal, the case should be remanded to district court for a hearing to determine whether trial counsel's decision to only appeal the denial of sentence modification constituted ineffective assistance of counsel.

Grant suggests that this case is controlled by *State v. Ortiz*, 230 Kan. 733. In *Ortiz*, the court held that while the timely filing of a notice of appeal is jurisdictional, an exception has been recognized in those cases where a defendant either was not informed of the right to appeal or was not furnished an attorney to perfect an appeal or was furnished an attorney for that purpose who failed to perfect and complete an appeal. 230 Kan. at 735-36. *Ortiz* is clearly distinguishable from the present case, as trial counsel here timely and properly perfected the appeal as to the denial of Grant's motion to modify.

In *State v. Van Cleave*, 239 Kan. 117, 119, 716 P.2d 580 (1986), the court held:

"An allegation of ineffective assistance of counsel will not be considered for the first time on appeal.

"The principal problem facing an appellate court when a claim of ineffective assistance of counsel is raised for the first time on appeal is that the trial court, which observed counsel's performance and was aware of the trial strategy involved, is in a much better position to consider counsel's competence than an appellate court is in reviewing the issue for the first time from a cold record. Many times what would appear in the record as an indication of ineffective counsel was fully justified under the circumstances present in the trial court. The trial judge should be the first to make a determination of such an issue and our refusal to consider the matter for the first time on appeal is sound."

The court in *Van Cleave* suggested that a remand procedure would be appropriate in such cases, as an alternative to a K.S.A. 60-1507 motion. 239 Kan. at 121.

However, the *Van Cleave* court held that, based upon the facts before it, remand was not necessary.

"The seeking of a remand from the appellate court so a determination of whether a defendant was denied effective assistance of counsel may first be considered by the trial court carries with it a solemn caveat. As the reason

for the rule is to provide the trial court which observed trial counsel's actions with an opportunity to consider the effective assistance of counsel rather than the appellate court relying on a cold record, it is incumbent upon appellant's counsel to do more than read the record and then determine that he or she would have handled things differently. In the instant case, appellate counsel admitted in argument that no attempt had been made to determine the circumstances under which trial counsel did or did not proceed as appellate counsel thought preferable. The defense attorney was not contacted nor was the prosecutor, which would seem to be the minimum investigation to lodge a charge of ineffective assistance of counsel unless the conduct is so blatant that it is obvious from the record. Except in the most unusual cases, to assert a claim of ineffective assistance of counsel without any independent inquiry and investigation apart from reading the record is questionable to say the least." 239 Kan. at 120-21.

Here, appellate counsel did conduct an inquiry and investigation as to reasons behind the narrow scope of the notice of appeal. In response to the show cause order, appellate counsel stated that trial counsel had been contacted by telephone to inquire as to the reasons in limiting the notice of appeal to the denial of the motion to modify. Appellate counsel then contended:

"Mr. Wilhoft's strategy was based on the assumption that an appeal must be taken within ten days of sentencing, and that pursuing a motion to modify waived the right to appeal the sentence. Mr. Wilhoft indicated that an appeal of Mr. Grant's sentence could take a long time because of the Court of Appeals' docket, whereas Mr. Grant could probably succeed on a motion to modify within 120 days. This strategy was based on an incorrect assumption of the law. . . . Mr. Wilhoft's failure to realize that the sentence could be appealed along with the denial of the motion to modify constituted ineffective assistance."

Wilhoft's written response to appellate counsel's request for a clarification of his strategy strongly disputes the above interpretation of the parties' conversation. Wilhoft's letter was attached to appellate counsel's response to the show cause order and as such, was served upon the State.

Wilhoft's letter to appellate counsel stated in relevant part:

"I must say that I find your conclusion that it 'appeared' to you during a phone conversation with me that I was 'unaware that a properly filed Motion to Modify Sentence extends the 10 day time limit to appeal the imposition of sentence' to be not only insulting, but without merit. At no time did I tell you or indicate to you that I was unaware of this fact.

"I did not file a Notice of Appeal in regard to the imposition of sentence upon Mr. Grant after consultation with Mr. Grant as I felt that such an

appeal would not be winable [*sic*]. This decision was based upon the fact that the sentence imposed upon Mr. Grant was well within the minimum and maximum for a Class E felony as set forth in the Kansas Statutes. At the sentencing in this matter, evidence was presented that there were probation revocations pending in four out of five cases in which Mr. Grant was involved. The supervising officers have stated that Mr. Grant has not successfully completed probation and would not be a good candidate for probation. Based upon Mr. Grant's record and based upon the conclusions of the P.S.I., I did not believe that I could in good faith frame an argument that the judge had abused his discretion in sentencing Mr. Grant to an indeterminate term of imprisonment within the guidelines provided by the Kansas Statutory Provisions for conviction of a Class E felony.

"I believe I represented Mr. Grant competently and I communicated the issues and procedures to be used in this case to Mr. Grant each step of the way on the appeal and during the trial court proceedings.

"I object to your contention that by failing to file a Notice of Appeal attacking Mr. Grant's sentence, I was ineffective as his counsel. I believe if you look at the transcript of the hearings in this matter, review the P.S.I., and review the SRDC report you will agree that an appeal attacking Mr. Grant's sentence is not winable [*sic*] and cannot be made in good faith. I believe that filing such an appeal could be considered frivolous on your part. I do not believe that my Notice of Appeal was in error as we intended to attack denial of Mr. Grant's Motion to Modify. The hearing on the Motion to Modify contained several errors by the court which are winable [*sic*] on appeal. I did not believe then, nor do I believe now, that I in good faith could have attacked Mr. Grant's sentence on appeal based upon his prior criminal record and past performance while on probation."

Appellate counsel argues that there were several meritorious issues other than the denial of the motion to modify, namely, that the trial court's statement at sentencing that the presumptions as to probation and assignment to community corrections had been overcome was unsupported by the record and that there was no factual basis for Grant's guilty plea.

## K.S.A. 1992 Supp. 21-4606a and 21-4606b Presumptions

Grant argues that the trial court erred in finding that the presumptions as to probation and assignment to community corrections had been overcome because the court only considered Grant's prior record in making this determination. Grant contends it is well established that "[i]nstead of considering only one factor, the court must make its decision after considering the policy of individualized treatment set out at K.S.A. 21-4601 and all the applicable guiding factors set forth in K.S.A. 21-4606." *State v.*

*Tittes,* 245 Kan. 708, 715, 784 P.2d 359 (1989). This issue is totally without merit.

The record reflects that the trial court was fully aware of both presumptions. The court also had the benefit of a PSI report which discussed Grant's alcohol problem. The court did place some emphasis on Grant's prior record, stating that he had three pending probation revocations and four or five DUI convictions. In conclusion, the trial court stated:

"Mr. Grant, it would not be doing you a favor to put you on probation again. At some point you're going to have to come to grips with your life. You're going to have to come to grips with the fact that you are and have been committing a lot of serious offenses over a period of in excess of five years.

"You can blame it on alcohol. You can blame it on drugs. You can blame it on anything you want to blame it on, but the basic blame comes right back down to you. As long as you choose to continue to act this way, then you represent a danger to society. You represent a danger to the community that you live in."

The trial court clearly sentenced Grant according to his individual characteristics, circumstances, and needs. See K.S.A. 21-4601. The court also considered public safety and the seriousness of his crime. See K.S.A. 21-4606(1).

Grant had demonstrated that he was incapable of following the terms required for probation, as three probation revocations were pending at the time of his sentencing in this case. The PSI report recommended against any "community based supervision." Kansas case law does not require a trial court to list the 21-4606 factors, although such a recitation is preferred. See *State v. Turner,* 251 Kan. 43, 47, 833 P.2d 921 (1992).

In *Turner,* the Kansas Supreme Court explained what must be considered by the trial court in overcoming the presumption of assignment to community ·corrections.

"We hold that in denying a presumptive sentence of assignment to community corrections, the trial court must consider the K.S.A. 21-4606 sentencing factors, the need for individualized treatment under K.S.A. 21-4601, and the various aggravating circumstances included in K.S.A. 1991 Supp. 21-4606b. The trial court need not address each factor expressly and need not necessarily quote the statutes, but the sentencing record must show that the trial court was aware of the presumptive status of community corrections and that it did consider (a) the sentencing factors, (b) individualized treatment, and (c) the aggravating circumstances." 251 Kan. at 48.

The record reflects that the court considered the relevant sentencing factors, such as Grant's prior record, and his individual needs, as well as the public safety. None of the aggravating circumstances listed in K.S.A. 1992 Supp. 21-4606b(2) were applicable to the facts of the case, but the court did consider Grant's extensive prior record, including numerous felony arrests which had been plea bargained down to misdemeanors, pending felony charges in another county, other misdemeanor convictions, and the three pending probation revocations. The trial court did not abuse its discretion in finding that the presumption of assignment to community corrections had been overcome or in finding that presumptive probation was overcome.

## Factual Basis of Grant's Plea

Grant also argues that the factual basis of his plea did not establish the required "intent to defraud," a necessary element of forgery. K.S.A. 21-3710. The factual basis presented to trial court was as follows:

"[THE STATE]: Okay, Your Honor, on October 14, the defendant was arrested by Parsons Police Department for a traffic violation. During the booking process, the defendant forged his name—forged another person's name on one of the documents and signed the document in another person's name; therefore, the forgery charges.

"THE COURT: Did you say on or about the 14th of October?

"[THE STATE]: Of August, sir.

"THE COURT: Of August?

"[THE STATE]: That's what I have down, 8-14-92.

"THE COURT: All right. Well, that's what I have too."

"When a prosecutor presents the evidence to the court, and that evidence shows that all elements of the crime are present, a factual basis for a plea has been reached." *State v. Reed*, 248 Kan. 506, 512-13, 809 P.2d 553 (1991). See *State v. Calderon*, 233 Kan. 87, 93, 661 P.2d 781 (1983) ("In establishing a factual basis for the plea the court must establish that all elements of the crime charged are present.").

The precise language "with intent to defraud" does not appear in the recitation of the facts by the prosecutor. This language does appear in the complaint, but there is no indication in the record as to whether Grant was provided with a copy. See *Widener v. State*, 210 Kan. 234, 239, 499 P.2d 1123 (1972) ("skimpy"

factual basis for plea in open court is sufficient where details of crime were set forth in the information and defendant is provided with a copy); *Cox v. State*, 16 Kan. App. 2d 128, 131, 819 P.2d 1241 (1991), *rev. denied* 250 Kan. 804 (1992) (failure to demonstrate factual basis for element of premeditation not error where defendant had previously been furnished a copy of the information containing this element and had acknowledged understanding the charge against him).

Grant acknowledged that he understood the charge against him as stated in the complaint, and he admitted the charge against him was true. The trial court found that a sufficient factual basis for the plea existed, and Grant entered the plea freely and voluntarily. K.S.A. 22-3210, which lists the statutory requirements for acceptance of guilty pleas, need not be strictly complied with where the purpose of the statute is served and the plea is knowingly and voluntarily made. *Noble v. State*, 240 Kan. 162, 164, 727 P.2d 473 (1986); *Trotter v. State*, 218 Kan. 266, 269, 543 P.2d 1023 (1975). Any error in the present case is harmless.

## Appellate Counsel Assertions

The assertions made by appellate counsel concerning trial counsel here are disturbing. The letter from trial counsel to appellate counsel explaining his actions, read together with the file and record in this case, leads us to conclude that Grant received more than adequate representation by trial counsel. We are disturbed by the fact that appellate counsel received trial counsel's detailed letter approximately two and one-half months before appellate counsel filed the brief in this case and, yet, the allegations which were, in our view, fully dealt with in trial counsel's letter were still an integral part of appellant's brief. Appellate counsel has a duty to follow up on and winnow out issues. As Chief Justice Holmes wrote in *Baker v. State*, 243 Kan. 1, 9-10, 755 P.2d 493 (1988):

"The failure of counsel to raise an issue on appeal is not, per se, to be equated with ineffective assistance of counsel. As stated by the Supreme Court in *Jones v. Barnes*, 463 U.S. 745, 77 L. Ed. 2d 987, 103 S. Ct. 3308 (1983):

'Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and fo-

cusing on one central issue if possible, or at most on a few key issues. Justice Jackson, after observing appellate advocates for many years, stated:

"One of the first tests of a discriminating advocate is to select the question, or questions, that he will present orally. Legal contentions, like the currency, depreciate through over-issue. The mind of an appellate judge is habitually receptive to the suggestion that a lower court committed an error. But receptiveness declines as the number of assigned errors increases. Multiplicity hints at lack of confidence in any one. . . . [E]xperience on the bench convinces me that multiplying assignments of error will dilute and weaken a good case and will not save a bad one." Jackson, Advocacy Before the United States Supreme Court, 25 Temple L.Q. 115, 119 (1951).

Justice Jackson's observation echoes the advice of countless advocates before him and since.' 463 U.S. at 751-52.

We agree. In an appeal from a criminal conviction, appellate counsel should carefully consider the issues, and those that are weak or without merit, as well as those which could result in nothing more than harmless error, should not be included as issues on appeal. Likewise, the fact that the defendant requests such an issue or issues to be raised does not require appellate counsel to include them. Conscientious counsel should only raise issues on appeal which, in the exercise of reasonable professional judgment, have merit."

Even if the above issues had been considered, our reading of the record leads us to find that there would be no reasonable probability that the outcome of this case would have been any different. See *Chamberlain v. State*, 236 Kan. 650, 657, 694 P.2d 468 (1985).

## TCF Recommendation

Grant next contends that the trial court erred in departing from a Topeka Correctional Facility (TCF) recommendation without articulating its reasons for doing so with sufficient particularity.

K.S.A. 1993 Supp. 21-4603(d)(1) provides that a trial court "shall modify such sentence if recommended by the Topeka correctional facility unless the court finds and sets forth with particularity the reasons for finding that the safety of members of the public will be jeopardized or that the welfare of the inmate will not be served by such modification."

In the present case, the TCF report contained the following recommendation:

"If arrangements can be made for a structured probation for this inmate, then we would favor probation. However, supervision should be highly structured, and the inmate should be made accountable for his behavior.

If such a structured probation cannot be provided, then we would favor the inmate serving an appropriate sentence."

The above language appears to be an unequivocal recommendation; a complete reading of the recommendation shows there is no question the TCF officials believed probation was the appropriate result in this case. See *State v. Dugan,* 17 Kan. App. 340, 343-44, 836 P.2d 584 (1992).

However, the recommendation is also conditional and, as such, it was dependent upon resources which may or may not have been available, if the court chose to follow it.

After hearing testimony from Grant's fiancee and listening to the arguments of counsel at the modification hearing, the trial court stated as follows:

"Well, when it comes to sentencing and sentence modifications, the Court is entitled and, in fact, has a duty to look at the whole record. And this record does not warrant a privilege of probation.

"The Court will make its particularized findings by way of journal entry. I'm not going to try to do it verbally from the bench. But this man has been on probation numerous times, and probation has not worked. It seems to have done him little good, and just considering his total record and the results of that record, it's the belief and finding of this Court that probation is simply not appropriate. It is not an appropriate sentence."

The court's journal entry listed the following findings:

"WHEREUPON, the Court finds that defendant has been convicted of three DUI's in the past two years and currently has two pending DUI's with an active bench warrant. Defendant has been placed on probation in five cases and revocations have been filed in four of these cases. That defendant has a pending felony case and two pending misdemeanor cases. That defendant has three separate property crimes convictions.

"WHEREFORE, the Court finds reason to believe that the safety of members of the public will be jeopardized should defendant's sentence be modified to Community Corrections or probation.

"FURTHER, the Court finds that due to the defendant's prior poor performance on probation, his welfare will not be served by a modification."

Grant argues that the court erred in making its particularized findings in the journal entry rather than at the modification hearing. This argument is without merit, as the trial court is not even obligated to hold such a hearing. *State v. Jennings,* 240 Kan. 377, 379, 729 P.2d 454 (1986).

Grant also argues that because the findings were made in the journal entry rather than in open court, he was unable to contest

the accuracy of the trial court's listing of his other pending charges. However, much of this information was also provided in Grant's PSI report and was addressed at the sentencing hearing. Grant had plenty of prior opportunities to object if he thought errors had been made in compiling his extensive prior record. Moreover, even if some of the probation revocation proceedings had been resolved in the interim between sentencing and the hearing on the motion to modify, this does not remove the fact that the revocations were filed in the first place. While the TCF report recommended probation, with conditions, the record reflected that Grant was simply an unsuitable candidate for any type of community based supervision.

We conclude that the journal entry indicates the trial court stated its reasons for departing from the TCF recommendation with sufficient detail and particularity. See *State v. Huskey*, 17 Kan. App. 2d 237, 240, 834 P.2d 1371 (1992).

"Absent a showing of an abuse of discretion, a court will not set aside a sentence which is within the statutory limits." *State v. Crichton*, 13 Kan. App. 2d 213, 217, 766 P.2d 832 (1988), *rev. denied* 244 Kan. 739 (1989).

The trial court did not abuse its discretion in refusing to modify Grant's sentence.

Affirmed.